# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION | § § § | |
| | § | Civil Action No. 4:17-CV-271 |
| v. | § | Judge Mazzant |
| | § | |
| MATTHEW W. FOX and WAYNE ENERGY, LLC | § § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the Securities and Exchange Commission's Motion for Remedies and Entry of Final Judgment (Dkt. #12). After reviewing the relevant pleadings and motion, the Court finds the motion should be granted.

### BACKGROUND

From March 2015 to October 2016, Defendant Wayne Energy, LLC ("Wayne Energy") and its sole member and manager, Defendant Matthew Fox ("Fox") (collectively "Defendants"), defrauded investors and misappropriated investor funds. Specifically, Defendants raised approximately over $900,000 from at least nine investors by selling interests in a joint venture formed to drill and operate in Texas. Fox, through Wayne Energy, solicited investor funds by providing offering materials filled with misrepresentations and omissions. Fox later systematically misappropriated investor funds by spending approximately $500,000 on personal expenses. By engaging in such conduct, Defendants violated several provisions of the federal securities laws.

On April 19, 2017, the Securities and Exchange Commission ("SEC") filed this action (Dkt. #1). On the same day, the SEC moved the Court to enter agreed judgments against each Defendant (Dkt. #2; Dkt. #3; Dkt. #4). On May 2, 2017, the Court entered such judgments (Dkt. #8; Dkt. #9). As part of the agreed judgments, each Defendant agreed to: (1) a permanent

injunction against future violations of the relevant provisions of the federal securities laws; and (2) allow the Court to determine the amounts of disgorgement, prejudgment interest, and civil penalty on motion of the SEC. *See* (Dkt. #3; Dkt. #4; Dkt. #8; Dkt. #9). Additionally, Fox agreed to be preliminarily enjoined from engaging in further securities offerings, with the Court to decide, on motion of the SEC, whether that injunction should be made permanent. *See* (Dkt. #3; Dkt. #8). Furthermore, as part of the agreed judgments, each Defendant, in defending against the SEC's motion: (1) is prohibited from arguing that he/it did not violate the federal securities laws; (2) is prohibited from challenging the validity of the consents or judgments; and (3) admits the allegations in the Complaint (Dkt. #1), solely for the purposes of the SEC's motion. *See* (Dkt. #3; Dkt. #4; Dkt. #8; Dkt. #9).

On September 28, 2017, the SEC filed its Motion for Remedies and Entry of Final Judgments (Dkt. #12). A response to the motion was due on October 12, 2017. *See* LOCAL RULE CV–7(e).[1] In an Order issued by the Court on November 6, 2017, the Court ordered Defendants to file a response no later than November 21, 2017 (Dkt. #14). As of the date of this Memorandum Opinion and Order, Defendants have not filed a response to the SEC's motion.

## ANALYSIS

As explained above, each Defendant entered into a settlement agreement with the SEC. Pursuant to such agreements, several issues remained undecided for a later determination to be made by the Court. Specifically, the Court is to determine the amounts of disgorgement, prejudgment interest, and civil penalty to be ordered against each Defendant, and whether the preliminary injunction preventing Fox from offering securities should be made permanent. The Court addresses each issue in turn.

---

[1] Local Rule CV–7(e) provides a party opposing a motion fourteen days to file a response and any supporting documents.

## I. Disgorgement

"The district court has broad discretion not only in determining whether to order disgorgement but also in calculating the amount to be disgorged." *SEC v. Huffman*, 996 F.2d 800, 802 (5th Cir. 1993). The purpose of disgorgement "is to deprive the party or parties responsible for the fraud of their gains and to deter future violations of the law." *SEC v. Helms*, No. A-13-CV-01306, 2015 WL 5010298, at *19 (W.D. Tex. Aug. 21, 2015) (citing *SEC v. AMX, Int'l, Inc.*, 7 F.3d 71, 73 (5th Cir. 1993)). In actions brought by the SEC involving a securities violation, "disgorgement need only be a reasonable approximation of profits causally connected to the violation." *Allstate Ins. Co. v. Receivable Fin. Co.*, 501 F.3d 398, 413 (5th Cir. 2007) (quoting *SEC v. First City Fin. Corp.*, 890 F.3d 1215, 1231 (D.C. Cir. 1989)). As such, the proper starting point for disgorgement is the total proceeds received from the sale of the securities. *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1104 (2d Cir. 1972).

The SEC bears the initial burden of showing that its requested disgorgement amount reasonably approximates the amount of profits connected to the violation. *First City*, 890 F.2d at 1232; *SEC v. Rockwall Energy of Tex., LLC*, No. H-09-4080, 2012 WL 360191, at *3 (S.D. Tex. Feb. 1, 2012). Once the SEC meets its burden, the burden shifts to the defendant to "demonstrate that the disgorgement figure was not a reasonable approximation." *First City*, 890 F.2d at 1232. In attempting to mitigate their liability, securities laws violators may not offset such liability with business expenses. *SEC v. United Energy Partners, Inc.*, 88 F. App'x 744, 746 (5th Cir. 2004) (citing cases); *see also SEC v. Kahlon*, No. 4:12-CV-517, 2016 WL 5661642, at *4 (E.D. Tex. Sept. 30, 2016). Courts are likely to order joint and several liability against defendants as to disgorgement when "two or more individuals or entities collaborate or have close relationships in

engaging in the illegal conduct." *SEC v. Hughes Capital Corp.*, 124 F.3d 449, 455 (3d. Cir. 1997); *see also SEC v. First Jersey*, 101 F.3d 1450, 1475 (2d Cir. 1996).

The SEC argues for a disgorgement amount of $924,650—the amount of funds invested by individuals as a direct result of Defendants' fraudulent scheme. To support its requests, the SEC attached the declaration of Sarah Mallett ("Mallett"), the SEC's lead investigative attorney in the investigation that led to the filing of the above referenced lawsuit (Dkt. #13). In her declaration, Mallett explained that after reviewing bank records, she calculated that Defendants raised a total of $924,650, which formed the basis of the SEC's lawsuit (Dkt. #13 at ¶ 6). Because Defendants failed to file a response to the SEC's motion, the Court assumes Defendants do not controvert such facts. *See* (Dkt. #14). As such, the Court finds that $924,650 is an appropriate amount for disgorgement. Further, because Fox carried out the scheme through Wayne Energy, the Court finds that Defendants are jointly and severally liable for such disgorgement.

## II. Prejudgment Interest

A court may award prejudgment interest in order to prevent a defendant from profiting from his securities violations by what amounts to an interest free loan procured by illegal activity. *SEC v. Gunn*, No. 3:08-CV-1013-G, 2010 WL 3359465, at *2 (N.D. Tex. Aug. 25, 2010) (citing *SEC v. Sargent*, 329 F.3d 34, 40–41 (1st Cir. 2003)). Such an award "rests within the equitable discretion of the district court to be exercised according to consideration of fairness." *Helms*, 2015 WL 5010298, at *19 (citations omitted). "In calculating this sum, the [C]ourt generally turns to the Internal Revenue Service's underpayment rate related to income tax arrearages." *Id.* (citing 26 U.S.C. § 6621(a)(2); *SEC v. Koenig*, 532 F. Supp. 2d 987, 995 (N.D. Ill. 2007)). Similar to disgorgement, a court is likely to order joint and several liability against defendants as to prejudgment interest on disgorgement when the defendants "collaborate or have close relationships

in engaging in the illegal conduct." *Hughes Capital Corp.*, 124 F.3d at 455; *First Jersey*, 101 F.3d at 1475.

The SEC request prejudgment interest in the amount of $80,004.66. To support this amount, the SEC attached, to Mallett's declaration, a copy of a Prejudgment Interest Report. (Dkt. #13 at p. 10). Mallett in her declaration explains that the calculations in the report are based on: "(1) first violation date equal to March 20, 2015; (2) payoff date of August 31, 2017 (the final day of the month preceding this declaration); and (3) violation amount of $924,650.00." (Dkt. #13 at p. 5). "Based on these inputs, [Mallett concluded that] the Defendants are liable for prejudgment interest of $80,004.66." (Dkt. #13 at p. 5).

Because the Court awarded the SEC disgorgement of Defendants' ill-gotten gains, prejudgment interest is appropriate. *See Helms*, 2015 WL 5010298, at *20. Based on the evidence presented by the SEC and Defendants lack of a response, the Court awards the requested amount of $80,004.66 for prejudgment interest. Further, because Fox carried out the scheme through Wayne Energy, the Court finds that Defendants are jointly and severally liable for such prejudgment interest.

### III. Civil Penalty

Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act authorize the Court to assess civil penalties. 15 U.S.C. §§ 77t(d), 78u(d). Such penalties "are designed to serve as deterrents against securities law violations, in contrast with disgorgement, which primarily aims to remove a defendant's profit from illegal transactions and which 'merely places the offender in the same position he would have been had he not committed the offense.'" *Helms*, 2015 WL 5010298, at *21 (quoting *SEC v. Lipson*, 129 F. Supp. 2d 1148, 1159 (N.D. Ill. 2001)). There are three tiers of penalties, each with a required showing. All violations are subject to first-tier

5

sanctions. *See* 15 U.S.C. §§ 77t(d), 78u(d). Second-tier sanctions are warranted when violations involve "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." *Id.* Third-tier sanctions are appropriate for violations that involve fraud and "result[ ] in substantial losses to other persons." *Id.* The maximum penalty the Court may award is the greater of the gross amount of pecuniary gain or the amount set by statute, i.e., set by the applicable tier.

Although the maximum penalty is determined by statute, the amount imposed is left to the Court's discretion. *SEC v. Kern*, 425 F.3d 143, 153 (2d Cir. 2005). In determining the appropriate civil penalty, the Court considers the following factors:

> (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition.

*Helms*, 2015 WL 5010298, at *21 (quoting *SEC v. Offill*, No. 3:07-CV-1643-D, 2012 WL 1138622, at *3 (N.D. Tex. Apr. 5, 2012)).

The SEC request the Court order each Defendant to pay a third-tier penalty up to the maximum award allowable,[2] which the SEC suggests is $924,650—Defendants' gross amount of pecuniary gain. Here, Defendants acted egregiously and participated in activities that involved fraud, deceit, and manipulation on a large scale in clear disregard of federal security laws. Specifically, Defendants' complex, wide-ranging fraud scheme involved knowingly misleading investors to contribute large financial investments followed by Defendants comingling and

---

[2] The maximum award under tier three is $163,118 for a natural person and $801,299 for any other person. *See* 17 C.F.R. § 201.1001, Table 1.

6

misappropriating such funds. Moreover, Defendants' violations resulted in substantial losses—nearly $1 million—to the investors.[3]

Although the SEC requests the maximum penalty, $924,650, in light of the significant disgorgement and prejudgment interest ordered herein, the Court declines to award such a severe civil penalty. Instead, the Court finds it appropriate to impose a civil penalty in the amount of misappropriated investor funds that Defendants used for personal enjoyment and expense. *See Helms*, 2015 WL 5010298, at *21. The SEC provided, in its Complaint, a detailed explanation and chart illustrating the amount of funds Defendants spent on personal expenses—$500,000.[4] *See* (Dkt. #1 at ¶¶ 17–19). Accordingly, the Court finds it just that each Defendant pay a civil penalty in the amount of $250,000—half the total of misappropriated funds spent for personal use.

## IV. Permanent Injunction

Section 21(d) of the Exchange Act provides for injunctive relief when the evidence establishes a "reasonable likelihood" that a Defendant will engage in future violations of the securities laws. *See* 15 U.S.C. §§ 77t(b), 78u(d)(1); *SEC v. Zale Corp.*, 650 F.2d 718, 720 (5th Cir. 1981); *SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980); *SEC v. Koracorp Indus., Inc.*, 575 F.2d 692 (9th Cir. 1978). "[T]he Commission is entitled to prevail when the inferences flowing from the defendant's prior illegal conduct, viewed in light of present circumstances, betoken a 'reasonable likelihood' of future transgressions." *Zale Corp.*, 650 F.2d at 720; *SEC v. Blatt*, 583 F.2d 1325 (5th Cir. 1973). When predicting the likelihood of future violations, the Court evaluates the totality of the circumstances. *Zale Corp.*, 650 F.2d at 720. Further, in determining whether to

---

[3] Neither the SEC nor Defendants presented evidence of Defendants' financial condition. As such, the Court does not address the fifth factor.

[4] Per the agreed judgments, each Defendant admits the allegations in the Complaint (Dkt. #1), solely for the purposes of the SEC's motion. *See* (Dkt. #3; Dkt. #4; Dkt. #8; Dkt. #9). Further, because Defendants failed to file a response to the SEC's motion, the Court assumes Defendants do not controvert such facts. *See* (Dkt. #14). As such, the Court concludes Defendants spent $500,000 of investor funds on personal expenses.

impose a permanent injunction, the Court considers several factors, including: (1) egregiousness of the defendant's conduct; (2) isolated or recurrent nature of the violation; (3) degree of scienter; (4) sincerity of the defendant's recognition of his transgression; and (5) likelihood of the defendant's job providing opportunities for future violations. *SEC v. Gann*, 565 F.3d 932, 940 (5th Cir. 2009); *Blatt*, 583 F.2d at 1334–35.

The SEC request that "the injunction preliminarily enjoining Fox from offering securities should be made permanent." (Dkt. #12 at p. 6). As explained earlier, Fox acted egregiously in conducting his fraudulent scheme. Specifically, Fox knowingly and systematically lied to investors, induced them to invest nearly $1 million, and used such investments for personal expenses. Further, this type of conduct is recurrent with Fox. From 2008 through 2015, Fox owned and operated a company—Frisco Exploration—which he used to offer securities. After Frisco Exploration failed, Fox formed Wayne Energy and solicited investors who previously invested in Frisco Exploration. Such conduct clearly illustrates a pattern of securities violations as well as a high likelihood of future violations. Accordingly, a permanent injunction preventing Fox from engaging in future securities offerings is warranted. *See Helms*, 2015 WL 5010298, at *18; *SEC v. Locke Capital Mgmt., Inc.*, 794 F. Supp. 2d 355, 369 (D.R.I. 2011).

## CONCLUSION

It is therefore **ORDERED** that the SEC's Motion for Remedies and Entry of Final Judgment (Dkt. #12) is hereby **GRANTED.**

It is further **ORDERED** that Defendants are jointly and severally liable for disgorgement in the amount of $924,650.

It is further **ORDERED** that Defendants are jointly and severally liable for prejudgment interest in the amount of $80,004.66.

It is further **ORDERED** that Defendants are each separately liable for a civil penalty in the amount of $250,000.

It is further **ORDERED** that Fox is permanently restrained and enjoined from directly or indirectly participating in the issuance, offer, or sale of any security; provided, however, that such injunction shall not prevent Fox from purchasing or selling securities for his own accounts.

**SIGNED this 8th day of March, 2018.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE